**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **BRUNO DE OLIVEIRA BOTELHO,**<br>**Petitioner,**<br><br>**v.**<br><br>**ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility, et al.,**<br>**Respondents.** | **Case No. 1:26-cv-14421-ADB** |

**PETITIONER'S MOTION TO ENFORCE JUDGMENT AND FOR IMMEDIATE RELEASE WITH INCORPORATED MEMORANDUM OF LAW**

**NOW COMES** Petitioner Bruno De Oliveira Botelho, through counsel, and moves under 28 U.S.C. §§ 2241 and 2243 to enforce this Court's October 14, 2026 Order granting his petition for a writ of habeas corpus, ECF No. 8, and for his immediate release from immigration detention. In support, Petitioner states:

On October 14, 2026, this Court granted the petition and ordered Respondents to provide Petitioner a bond hearing under 8 U.S.C. § 1226(a) within ten days. ECF No. 8. The petition sought a constitutionally adequate bond hearing, and Respondents acknowledged that Petitioner is entitled to a bond hearing. ECF Nos. 1, 7, 8.

On October 22, 2026, an immigration judge ("IJ") at the Chelmsford Immigration Court held the hearing and, on October 23, 2026, denied bond on the sole ground that DHS had proven by clear and convincing evidence that Petitioner is a danger to the community. The IJ made no flight-risk finding.

The hearing did not satisfy the Court's Order or the Due Process Clause. The dangerousness finding rests entirely on two unsigned, uncorroborated police narratives. One describes a 2024 arrest on a charge dismissed for lack of prosecution. The other describes a September 2026 arrest on

charges that remain pending, on which the state bail commissioner released Petitioner on personal recognizance. Petitioner has no criminal convictions. The IJ did not identify any corroboration, did not address counsel's specific challenges to the reports, disposed of alternatives to detention in a single conclusory sentence, and did not engage with Petitioner's 203-page evidentiary submission. Because Respondents did not provide the hearing the Court ordered, Petitioner's continued detention is unlawful. Courts in this District, including this Court, have ordered immediate release on materially similar records.

**WHEREFORE,** Petitioner respectfully requests that the Court (1) order Respondents to release him immediately, subject to reasonable conditions of supervision imposed within seven days; or, in the alternative, (2) order Respondents to provide, within seven days, a new bond hearing before a different immigration judge that complies with the requirements set out in the accompanying proposed order, failing which Respondents shall release him; and (3) order Respondents to file a status report confirming compliance. Because Petitioner remains detained and his application for relief is due before the immigration court on November 4, 2026, he respectfully requests a prompt ruling and asks that the Court direct Respondents to respond within seven days. The grounds for this motion are set out in the incorporated memorandum of law below.

## MEMORANDUM OF LAW

### I. INTRODUCTION

This Court ordered a § 1226(a) bond hearing at which the government would bear the burden of proving, by clear and convincing evidence, that Petitioner is a danger to the community, or, by a preponderance, that he is a flight risk. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). The hearing Respondents provided did not hold the government to that burden. The IJ found Petitioner dangerous based on two police narratives that were not signed, not corroborated, and did not result in a conviction, and on BIA language about the general dangers of drunk driving drawn

from a case involving three prior DUI convictions, although Petitioner has no convictions at all. The IJ did not explain why the alternatives counsel raised could not address any concern, and did not engage with the evidence Petitioner submitted: an approved family-based visa petition, two U.S. citizen sons he supports under family-court orders, a business he operates and pays taxes on, a stable home, a U.S. citizen sponsor, and twenty-five letters of support.

Because Respondents did not provide the hearing the Court ordered, Petitioner asks the Court to enforce its Order and direct his release.

## II. BACKGROUND

### A. Petitioner

Petitioner is a 30-year-old citizen of Brazil. He was admitted to the United States at Miami on November 22, 2015, as a B-2 visitor, and in September 2016 USCIS approved his change of status to F-1 student. Ex. D at EOIR 3–4; Ex. E at EOIR 23, 25–26.[1] In November 2016, while Petitioner was in status, his lawful permanent resident father filed a Form I-130 on his behalf; USCIS approved it on March 1, 2018. Ex. E at EOIR 13, 15. His father naturalized in 2023 and has since passed away. *Id.* at EOIR 18, 20–21. His mother is a lawful permanent resident living in Medford. *Id.* at EOIR 131–32.

Petitioner lives in Somerville with his fiancée and her daughter. *Id.* at EOIR 49, 51–69, 156. He has two U.S. citizen sons, ages four and six, whom he supports under custody and child-support orders entered by the Suffolk and Middlesex Probate and Family Courts. *Id.* at EOIR 31, 33, 35–43. He operates JB Botelho Construction Inc., a Massachusetts painting and construction business, and

[1]Citations in the form "Ex. __ at EOIR __" refer to the page numbers EOIR generated when each submission was uploaded to the electronic record of proceedings, which the IJ also used. Ex. A at 2 n.1. Ex. A is the IJ's bond order; Ex. B is the hearing transcript; Ex. C is DHS's October 14, 2026 evidence submission (Bond Exh. 3); Ex. D is the Form I-213 (Bond Exh. 2); Ex. E is Petitioner's evidence submission (Bond Exh. 4); and Ex. F is DHS's October 22, 2026 SEVIS submission (Bond Exh. 5).

files personal and business tax returns. *Id.* at EOIR 45, 47, 71–118. He has no criminal convictions. Ex. D at EOIR 4.

**B. Petitioner's Detention and This Court's Order**

On September 27, 2026, Massachusetts State Police arrested Petitioner for operating under the influence and related motor vehicle offenses. Ex. C at EOIR 9. The bail commissioner released him on personal recognizance. *Id.* ICE then arrested him at the State Police barracks the same day, and he has been detained at the Plymouth County Correctional Facility since. Ex. D at EOIR 3–4.

Petitioner filed this habeas petition September 28, 2026. ECF No. 1. Respondents acknowledged that he is entitled to a bond hearing. ECF No. 7. On October 14, 2026, the Court granted the petition, ordered Respondents to provide a bond hearing under § 1226(a) within ten days, and ordered a status report stating, if bond was denied, "the reasons for that denial." ECF No. 8. Respondents filed their status report on October 26, 2026. ECF No. 9.

**C. The Evidence Before the Immigration Judge**

DHS submitted a Form I-213 (Ex. D); a SEVIS record (Ex. F); and, as to dangerousness, two police narratives with accompanying applications for criminal complaint and court docket printouts (Ex. C).

The narrative of the September 2026 arrest was written by Trooper James Cohun, who did not witness the driving or the stop. Ex. C at EOIR 9. According to the narrative, a different officer, Sergeant Shea, observed Petitioner's vehicle pass another vehicle by entering the opposite lane, stopped the vehicle, removed Petitioner, handcuffed him, and placed him in the rear of the sergeant's cruiser. *Id.* Trooper Cohun "arrived on scene and observed [Petitioner] in the rear of" that cruiser. *Id.* Petitioner, who speaks Brazilian Portuguese, communicated in "broken Spanish," and a third trooper "helped translate." *Id.* Through that exchange, Petitioner reportedly said he had had two beers. *Id.* Trooper Cohun recorded that Petitioner appeared "dazed and confused," with

bloodshot eyes, an odor of alcohol, and slurred speech. *Id.* No field sobriety tests were administered: the trooper "deemed it unsafe to perform Standard Field Sobriety Tests roadside" because of the weather, and at the barracks Petitioner declined them. *Id.* At the barracks, after Petitioner "did not give a definite answer" when asked to provide a breath sample, he was recorded as a refusal. *Id.* There is no breath or blood alcohol result. The bail commissioner released Petitioner on personal recognizance, and he was served with a notice of license suspension. *Id.* Petitioner was charged with OUI, negligent operation, failure to stop for police, and a marked-lanes civil infraction. *Id.* at EOIR 14. The charges are pending.[2] Although the narrative states that body-worn and cruiser camera video was recorded, DHS did not submit it. *Id.* at EOIR 10. Neither the narrative nor the accompanying statement of facts is signed. *Id.* at EOIR 5–6, 10.

The second narrative, by Trooper Cesar Velez Rodriguez, concerns a May 31, 2024 incident. *Id.* at EOIR 21–22. It summarizes a passerby's report that a man struck a woman by the side of the road and pulled her toward a vehicle. *Id.* at EOIR 21. The witness's written statement was not submitted. The complainant, Petitioner's fiancée, declined medical evaluation; the trooper noted a red scratch on her neck and a two-inch scratch on her hand. *Id.* In her recorded statement, which DHS also did not submit, she told the trooper that the two had argued in the car, that "they both started slapping each other with open hands," that she fell while getting out of the car, that she could not recall how she got the scratch but believed it was from the fight, that "they were both at fault," and that this was "the first time it gets physical." *Id.* When the trooper reached Petitioner by phone, he went to the State Police barracks on his own. *Id.* at EOIR 21–22. The narrative is

[2]The Somerville District Court docket reflects that Petitioner was defaulted at his September 28, 2026 arraignment. Ex. C at EOIR 15. He could not have appeared: ICE took him into custody at the State Police barracks on September 27, 2026, and he has been in immigration detention ever since. Ex. D at EOIR 3–4. Neither DHS nor the IJ relied on the default.

unsigned. *Id.* at EOIR 18, 22. The Woburn District Court dismissed the single charge, assault and battery on a family or household member, for lack of prosecution on July 31, 2025. *Id.* at EOIR 26.[3]

Petitioner submitted 203 pages of evidence. Ex. E. In addition to the documents described above, his approved I-130, his father's naturalization and death certificates, his sons' birth certificates, the family-court custody and support orders, his lease and auto policy, and his business records and tax returns, Petitioner submitted twenty-five letters of support from family, friends, business associates, the mothers of his children, and his fiancée. *Id.* at EOIR 120–80. His fiancée wrote that they have lived together at the same Somerville address for four years.[4] *Id.* at EOIR 156. Petitioner also submitted a letter from a U.S. citizen sponsor, Francisco Antonio Dias of Danvers, who committed to provide housing, transportation to court and other appointments, and financial support, together with his identification and tax returns. *Id.* at EOIR 182–97.

**D. The Hearing and the IJ's Decision**

The hearing took place on October 22, 2026, before IJ Adam Leonatti. Ex. B.[5] DHS argued that Petitioner is a danger based on the two police narratives, and a flight risk based on the pending criminal case, his status violation, and "speculative" relief. *Id.* DHS's entire argument on alternatives was one sentence: "because of the seriousness of the danger in this case, no alternatives to detention would ameliorate the danger or flight risk." *Id.*

Petitioner's counsel responded that DHS could not meet its burden as a matter of law because both narratives were unsigned and uncorroborated, citing *Matter of Arreguin de Rodriguez*,

---

[3]The Woburn docket also reflects a single missed trial-readiness date on November 13, 2024; the default was removed the next day. Ex. C at EOIR 25. Petitioner otherwise appeared throughout the fourteen months the case was pending. Neither DHS nor the IJ relied on that entry.

[4]The 2024 narrative states that the complainant was engaged to Petitioner and lived with him. Ex. C at EOIR 21. The identification attached to the letter of Petitioner's fiancée, Leidiane Moura da Silva Souza, lists the same Somerville address the narrative gives for Petitioner. She writes that she and Petitioner have been together for four years and asks for his release. Ex. E at EOIR 156.

[5]The transcript, Ex. B, is an unofficial transcription prepared from the immigration court's digital audio recording of the October 22, 2026 hearing.

*Rosa v. Garland*, and *Maurice v. Bondi*. *Id.* Counsel identified specific reliability problems: the OUI narrative's author did not observe the driving or the stop and communicated with Petitioner, who spoke "broken Spanish," through another trooper; the 2024 witness and complainant statements were not in evidence; and the complainant's own account described mutual slapping. *Id.* Counsel argued that "the Department has also failed to prove that there are no less restrictive means other than detention to achieve the Department's goals," and walked through Petitioner's evidence tab by tab. *Id.*

In a written decision dated October 23, 2026, the IJ denied bond. Ex. A. The IJ found Petitioner a danger to the community and made no finding on flight risk. *Id.* at 3–5. The analysis consists of the following. The IJ found "the court documents and police report sufficiently reliable and corroborated," citing *Rosa v. Garland*, 114 F.4th 1 (1st Cir. 2024), for the proposition that "providing a respondent an opportunity to rebut a police report's reliability, standing alone, satisfies the fundamental fairness requirement." Ex. A at 4. The IJ did not identify any corroborating evidence. The IJ then stated that the OUI "arrest . . . is extremely recent," that "the recency of Respondent's criminal conduct is indicative of future dangerousness," and, quoting *Matter of Siniauskas*, 27 I. & N. Dec. 207 (BIA 2018), that "[d]runk driving is an extremely dangerous crime." *Id.* The IJ did not discuss the facts of the 2024 incident. The IJ's treatment of Petitioner's evidence was a single sentence noting "his strong family ties in the United States, United States citizen children, and available family to confer immigration benefits." *Id.* The IJ's treatment of alternatives was the conclusion that "there are no conditions or combination of conditions that would reasonably ensure the safety of the community." *Id.*

**III. LEGAL STANDARD**

This Court "retains jurisdiction to review compliance with its earlier order conditionally granting habeas relief," and specifically "has jurisdiction to review whether the bond hearing it

ordered comported with constitutionally mandated burdens of proof." *Gamitto de Souza v. Wesling*, No. 1:26-cv-12059-ADB, ECF No. 14 (D. Mass. July 27, 2026) (Burroughs, J.) (quoting *Massingue v. Streeter*, No. 19-cv-30159, 2020 WL 1866255, at *3 (D. Mass. Apr. 14, 2020) (quoting *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 142 (D. Mass. 2019))); *see Hernandez-Lara*, 10 F.4th at 33–34. Section 1226(e) does not bar this review. Although the government maintains discretion to grant or deny bond, that discretion is limited by "the constitutional restraints applicable to all government action." *Hernandez-Lara*, 10 F.4th at 34; *see Brito v. Garland*, 22 F.4th 240, 253 (1st Cir. 2021). Petitioner does not ask the Court to reweigh evidence. He asks the Court to determine whether Respondents provided the hearing the Court ordered. *See Rogerio Ramos v. Moniz*, No. 26-cv-11388-LTS, ECF No. 19 at 6 n.2 (D. Mass. Apr. 27, 2026) (a motion to enforce is not "a vehicle for ordinary appellate review of an IJ's bond determination," but a determination whether respondents "failed to comply with [the Court's] prior Order").

To show that an IJ failed to apply the constitutionally required standard, a petitioner may "point to the language of the immigration judge's opinion or demonstrate that 'the evidence itself could not—as a matter of law—have supported' the immigration judge's decision to deny bond." *Gamitto de Souza*, ECF No. 14 (quoting *Garcia v. Hyde*, No. 25-cv-585, 2025 WL 3466312, at *1 (D.R.I. Dec. 3, 2025) (quoting *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 143 (D. Mass. 2019)). Relief is warranted where the IJ's "exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *Id.* (quoting *Diaz Ortiz*, 384 F. Supp. 3d at 144 (quoting *Pratt v. Doll*, No. 17-cv-01020, 2019 WL 722578, at *4 (M.D. Pa. Feb. 20, 2019))). Petitioner proceeds on both routes.

Exhaustion is not required. No statute requires a § 1226(a) detainee to appeal a bond denial to the Board of Immigration Appeals before seeking habeas relief, and exhaustion is excused where the petitioner "may suffer irreparable harm if unable to secure immediate judicial consideration of

his claim," including where he "remains detained." *Machado Da Silva v. Moniz*, No. 1:26-cv-11798-JEK, ECF No. 18 (D. Mass. July 10, 2026) (quoting *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997), and *Brito*, 22 F.4th at 256); *Miti v. Moniz*, 827 F. Supp. 3d 206, 216 (D. Mass. 2026); *Costa v. McDonald*, No. 25-cv-13469-AK, 2026 WL 371198, at *3 (D. Mass. Feb. 10, 2026); *Vargas v. Warden, Plymouth Cnty. Corr. Facility*, No. 26-cv-11740-AK, 2026 WL 1453510, 2026 U.S. Dist. LEXIS 113837, at *11–13 (D. Mass. May 22, 2026) (noting average BIA processing time of 204 days for bond appeals).

## IV. ARGUMENT

### A. The Dangerousness Finding Rests on Uncorroborated Police Narratives That Cannot, as a Matter of Law, Constitute Clear and Convincing Evidence.

Due process required DHS to prove dangerousness by clear and convincing evidence. *Hernandez-Lara*, 10 F.4th at 41. That standard reflects "the value society places on individual liberty." *Id.* at 39–40 (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). It requires evidence that makes the government's factual contentions "highly probable," *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984), and that is "so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue," *Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 285 n.11 (1990) (citation omitted). *See Miti*, 827 F. Supp. 3d at 217 (applying clear-and-convincing standard to police report of dismissed charge).

1. *The IJ conflated reliability with corroboration.*

The First Circuit treats two questions separately. One is whether a police report may be considered at all: the agency may rely on one if it is reliable and its use is not fundamentally unfair, and the fairness requirement is satisfied by an opportunity to rebut. *Rosa v. Garland*, 114 F.4th 1, 11–12 (1st Cir. 2024). The other is how much weight the report may bear. Under *Matter of*

*Arreguin de Rodriguez*, 21 I. & N. Dec. 38, 42 (BIA 1995), "the agency may not give 'substantial weight' to a police report in the absence of 'a conviction or corroborating evidence of the allegations contained' in the report." *Rosa*, 114 F.4th at 17. The First Circuit has stressed that these "considerations are distinct": reliability and fundamental fairness do not satisfy "the additional requirement that a police report, absent a conviction, must be corroborated before the agency may give the report substantial weight." *Maurice v. Bondi*, 154 F.4th 15, 21–22 (1st Cir. 2025).[6]

The IJ's decision makes exactly the error *Maurice* identified. The IJ declared the reports "sufficiently reliable and corroborated" and cited *Rosa* only for the fundamental-fairness proposition that an opportunity to rebut "standing alone" suffices. Ex. A at 4. That addresses whether the reports could be considered, not how much weight they could bear. The IJ identified no corroborating evidence, and there is none in the record. The decision "point[s] to" its own legal error on its face. *Diaz Ortiz*, 384 F. Supp. 3d at 143. The IJ then gave the reports more than substantial weight, because they are the only evidence of dangerousness in the record.

2. *Neither narrative is corroborated, and the court records add no corroboration.*

The rest of DHS's evidence does not supply the missing corroboration. The docket printouts and applications for criminal complaint show only that charges were filed on the strength of the same narratives. Reliance on a pending charge "is simply additional reliance on the police report," *Rosa*, 114 F.4th at 21, and "the fact of a prosecution does not itself constitute corroboration," *id.* at 22. *See also Suarez-Gonzalez v. Schmidt*, No. 26-cv-590-JPS, ECF No. 29 at 11 (E.D. Wis. Oct. 5, 2026) (criminal complaint "establishes only that there was probable cause," which "definitionally falls short of clear and convincing evidence"). The I-213 merely recites the arrests. Ex. D at EOIR

[6] *Rosa* and *Maurice* arose in the context of discretionary relief, where the noncitizen bears the burden. *Rosa*, 114 F.4th at 17; *Maurice*, 154 F.4th at 21–22. The corroboration principle applies with greater force at a § 1226(a) bond hearing, where the government bears the burden and must meet the heightened clear-and-convincing standard. *Hernandez-Lara*, 10 F.4th at 39–41; *see Machado Da Silva v. Moniz*, No. 1:26-cv-11798-JEK, ECF No. 18 (D. Mass. July 10, 2026) (applying *Maurice*, *Rosa*, and *Arreguin* at bond hearing); *Almeida De Souza v. Wesling*, No. 1:26-cv-13761-BEM, ECF No. 19 at 5 (D. Mass. Sept. 11, 2026) (same).

4. Petitioner did not admit striking anyone; his recorded account was that he put his arms around the complainant and told her to get back in the vehicle. *Id.* at EOIR 21. DHS did not submit the body-worn and cruiser camera video both narratives describe, the witness and complainant statements the 2024 narrative summarizes, or any testimony.[7]

Courts in this District have repeatedly held that this kind of record cannot sustain a dangerousness finding. In *Machado Da Silva*, Judge Kobick ordered release where the IJ found the petitioner dangerous based on a "reliable" police report and pending charges: "An uncorroborated police report describing [the petitioner's] arrest is insufficient, as a matter of law, to constitute clear and convincing evidence of dangerousness," and the state court summary of pending charges was "[a]lso insufficient." ECF No. 18 (collecting cases). In *Cesvette v. Moniz*, Judge Kelley ordered release where the finding "rested entirely on the dismissed charges and the hearsay allegations in the police report," explaining that detention based on an arrest never tested "following the full procedural protections our criminal justice system offers" lacks the neutral fact-finding due process requires. No. 26-cv-12662-AK, 2026 WL 2494666, 2026 U.S. Dist. LEXIS 191097, at *10 (D. Mass. Aug. 25, 2026) (quoting *Doe v. Moniz*, 800 F. Supp. 3d 203, 216 (D. Mass. 2025)). In *De Oliveira v. Moniz*, Judge Saris ordered release where the dangerousness finding rested on pending misdemeanor charges and the police report describing them, which "lack[ed] sufficient indicia of reliability to support a reasonable conclusion that Petitioner is dangerous by clear and convincing evidence." No. 26-cv-12598-PBS, 2026 WL 2110773, 2026 U.S. Dist. LEXIS 162316, at *3–5 (D. Mass. July 22, 2026). *See also Miti*, 827 F. Supp. 3d at 217 (dismissed misdemeanor assault charge); *Rogerio Ramos*, ECF No. 19 at 4–5 (IJ "relied on uncorroborated police reports"); *Almeida De Souza*, ECF No. 19 at 5–6 (collecting cases).

[7] *Rosa* left open whether corroboration may come from within the police report itself. 114 F.4th at 22. The Court need not reach that question. The IJ identified no corroboration of any kind, and the observations recorded in the 2026 narrative are themselves part of the report, made by an officer who did not witness the driving and who communicated with Petitioner, a Portuguese speaker using "broken Spanish," through a third trooper. Ex. C at EOIR 9.

3. *The IJ Did Not Address the Specific Defects Counsel Identified in Each Narrative.*

Counsel identified concrete reasons the narratives could not carry DHS's burden. The IJ addressed none of them. An IJ "may not simply ignore substantial testimonial and documentary proof," and the "logical underpinnings" of the decision must be "clear from the record." *Gamitto de Souza*, ECF No. 14 (quoting *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023)), and *López-Gómez v. Bondi*, 154 F.4th 1, 4 (1st Cir. 2025)).

With regard to the 2026 narrative*,* its author did not see Petitioner drive, did not conduct the stop, and first encountered him handcuffed in another officer's cruiser. Ex. C at EOIR 9. The officer who made the stop gave no account. The author's roadside observations of Petitioner's condition were made while Petitioner, a Portuguese speaker, was communicating in "broken Spanish" through a third trooper, circumstances that bear directly on how much weight to give observations that Petitioner seemed "dazed and confused" and "did not know what had happened." *Id.* No field sobriety tests were performed; the trooper found roadside testing unsafe because of the weather, and Petitioner declined testing at the barracks. *Id.* There is no chemical test result; the "refusal" was recorded after Petitioner, still communicating through translation, "did not give a definite answer." *Id.* The narrative is unsigned, and DHS did not submit the video it references. *Id.* at EOIR 10. In addition, the Massachusetts bail commissioner, who had the same report and was charged with assessing danger, released Petitioner on personal recognizance. *Id.* at EOIR 9. *See Atariguana-Buele v. Warden, Plymouth Corr. Facility*, No. 26-cv-12168-LTS, 2026 WL 1825934, 2026 U.S. Dist. LEXIS 141138, at *6–8 (D. Mass. June 25, 2026) (faulting IJ who rested on a single unresolved charge "despite a state-court judge having released [the petitioner] on conditions" and who did not explain why those conditions would not suffice).

The charge arising from the 2024 incident was dismissed. Ex. C at EOIR 26. The account of that incident in the narrative is the trooper's unsworn summary of what a passerby told him, and

DHS did not produce the passerby's statement. *Id.* at EOIR 21. The complainant's own account, as recorded in the same narrative, described mutual slapping, a fall, uncertainty about how the scratch occurred, shared fault, and a first physical incident. *Id.* Petitioner went to the barracks voluntarily. *Id.* at EOIR 21–22. Two years later, the complainant, Petitioner's fiancée, lives with him and submitted a letter to the IJ in support of his release. *Id.* at EOIR 21; Ex. E at EOIR 156. *See Cesvette*, 2026 U.S. Dist. LEXIS 191097, at *9–10 (alleged victim supported release); *De Oliveira*, 2026 U.S. Dist. LEXIS 162316, at *4–5 (same). The IJ's decision does not discuss any of these facts. It mentions the 2024 arrest only to note that "[t]he charges were dismissed." Ex. A at 3.

**B. The IJ Recited the Government's Burden but Applied the Pre-*Hernandez-Lara* Framework, Which Places the Burden on the Respondent.**

The IJ's decision states that DHS bears the burden of proving dangerousness by clear and convincing evidence. Ex. A at 2–3. But "[m]erely stating the proper standard does not discharge the obligation to correctly apply the standard." *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025); *see Vargas*, 2026 U.S. Dist. LEXIS 113837, at *14. The question is whether the IJ actually held the government to its burden. The language of the decision shows that he did not. *See Gamitto de Souza*, ECF No. 14 (petitioner may "point to the language of the immigration judge's opinion"). Before *Hernandez-Lara*, the Board required the noncitizen in a § 1226(a) custody proceeding to "establish to the satisfaction of the Immigration Judge and the Board that he or she does not present a danger." *Matter of Siniauskas*, 27 I. & N. Dec. 207, 207 (BIA 2018); *see Matter of Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006). The First Circuit held that due process requires the opposite: the government must prove dangerousness. *Hernandez-Lara*, 10 F.4th at 39–41. *Siniauskas* applied the old allocation. The IJ's analysis is built on it.

The IJ relied on *Siniauskas* and *Matter of Roberts* to hold that Petitioner's "recent offense is a 'better indication of [the Respondent's] future conduct than [the Respondent's] assurances to the

contrary,'" and that "an alien's 'assurances' alone are not sufficient to 'show genuine rehabilitation.'" Ex. A at 4 (quoting *Siniauskas*, 27 I. & N. Dec. at 209, and *Matter of Roberts*, 20 I. & N. Dec. 294, 303 (BIA 1991)). That reasoning only makes sense if Petitioner had something to prove. Petitioner offered no "assurances," and under *Hernandez-Lara* he had no obligation to show rehabilitation. The question was whether DHS had proven, by clear and convincing evidence, that he is dangerous.

The IJ also concluded that "the Respondent's positive equities do not outweigh the danger indicated by his criminal history." Ex. A at 4. That framing treats danger as established and asks whether Petitioner's evidence overcomes it. It reflects the *Siniauskas* rule that "family and community ties generally do not mitigate an alien's dangerousness" once the respondent has failed to carry his burden. 27 I. & N. Dec. at 210. It does not reflect a finding that the government's evidence was itself clear and convincing.

The IJ further treated the police narratives as reliable because Petitioner had "an opportunity to rebut" them, citing *Rosa*. Ex. A at 4. In *Rosa*, the noncitizen bore the burden of showing he merited discretionary relief, and his failure to refute the police report "made it more difficult for him to overcome the police report" and "demonstrate that he warranted a favorable exercise of discretion." 114 F.4th at 21. Applying that framework here meant DHS's narratives stood unless Petitioner disproved them. At a hearing where the government bears the burden, a report does not become clear and convincing evidence because the respondent failed to rebut it.

In each of these respects, the IJ placed on Petitioner the burden that *Hernandez-Lara* assigns to the government. Stating the correct standard while applying the one *Hernandez-Lara* rejected does not give Petitioner the hearing the Court ordered.

### C. The IJ Substituted Categorical Statements About Drunk Driving for the Individualized, Government-Burdened Inquiry Due Process Requires.

Having accepted the narratives without corroboration, the IJ's dangerousness analysis reduced to two propositions: the OUI arrest is "extremely recent," and drunk driving is dangerous in general. Ex. A at 4. Neither proposition is evidence that *this* Petitioner poses a danger, let alone clear and convincing evidence. *Matter of Guerra*, 24 I. & N. Dec. 37, 40–41 (BIA 2006), directs attention to how "extensive, recent, and serious" a respondent's criminal activity is, on the basis of evidence that is "probative and specific." The IJ addressed only recency and treated the recency of an *arrest* as proof of the underlying conduct. But how recent an arrest is says nothing about whether the alleged conduct occurred.

The IJ's principal authority underscores the gap. *Siniauskas* involved a respondent with three DUI convictions and a new DUI arrest. 27 I. & N. Dec. at 208–09. Petitioner has no conviction of any kind. The general language the IJ borrowed from *Siniauskas* about the "grisly toll" of drunk driving describes a category of offense. It says nothing about whether DHS proved, by clear and convincing evidence, that Petitioner committed that offense or that he presents a present danger. Reasoning that would justify detention of anyone arrested for OUI, without regard to the strength of the evidence, is not the individualized determination due process requires.

**D. The IJ Did Not Meaningfully Consider Alternatives to Detention.**

Courts in this District, including this Court, hold that due process requires the IJ to consider whether alternatives to detention could address any risk the government has shown, and that a conclusory statement that no conditions would suffice does not satisfy that obligation. *Gamitto de Souza*, ECF No. 14 (IJ's statement that "no bond amount . . . [would] ameliorate [Petitioner's] risk" did "not reflect meaningful consideration of alternatives to detention"); *Montesinos Olivar v. Wesling*, No. 26-cv-11102-ADB, ECF No. 14 (D. Mass. May 7, 2026) (Burroughs, J.) (same, as to IJ's statement that "no bond . . . [would] mitigate his risk of flight"); *Costa*, 2026 WL 371198, at *3 ("The Immigration Judge's failure to consider whether alternatives to detention or other less

restrictive means could address the risks of danger posed by Petitioner to the community was constitutionally deficient."); *De Oliveira*, 2026 U.S. Dist. LEXIS 162316, at *5 (IJ's statement "perfunctorily that 'no alternative to detention exists that would ensure the safety of the community'" insufficient); *Machado Da Silva*, ECF No. 18; *Rogerio Ramos*, ECF No. 19 at 4–5; *Atariguana-Buele*, 2026 U.S. Dist. LEXIS 141138, at *5–7. "[D]ue process requires the Government to at least address why those alternatives might be inadequate." *Costa*, 2026 WL 371198, at *3.

The IJ's decision contains only the conclusion that "there are no conditions or combination of conditions that would reasonably ensure the safety of the community." Ex. A at 4. It does not identify a single alternative or explain why it would fail. DHS offered nothing more: one sentence asserting that "no alternatives to detention would ameliorate the danger." Ex. B. Counsel expressly argued that DHS had not met its burden on less restrictive means. *Id.*[8]

The omission matters here because the alleged risk is specific and readily addressed. The danger the IJ identified is impaired driving. Petitioner was already served with a notice of license suspension. Ex. C at EOIR 9. Conditions prohibiting him from operating a motor vehicle, requiring alcohol abstention and monitoring, and requiring ICE reporting or electronic monitoring would each address that concern directly. Petitioner is prepared to comply with conditions including: no operation of a motor vehicle; abstention from alcohol with monitoring; ATD reporting and/or GPS monitoring; and residence at his Somerville home or with his sponsor. Petitioner's U.S. citizen sponsor offered housing and transportation to every hearing and appointment. Ex. E at EOIR 182. And the bail commissioner, applying Massachusetts release standards to the same report, released

[8]This case is unlike *Gupta v. Brackett*, No. 1:26-cv-207-PB-TSM, 2026 WL 1734839 (D.N.H. June 16, 2026), where the court found no error because the petitioner "did not ask the IJ to consider other alternatives to detention." 2026 U.S. Dist. LEXIS 133402, at *10. Here counsel squarely argued that DHS had "failed to prove that there are no less restrictive means other than detention to achieve the Department's goals." Ex. B. In any event, consideration of alternatives is required whether or not the petitioner proposes them. *Machado Da Silva*, ECF No. 18 (citing *Costa*, 2026 WL 371198, at *3).

Petitioner on personal recognizance. Ex. C at EOIR 9. The IJ did not engage with any of this. *See Rogerio Ramos*, ECF No. 19 at 4–5 (failure especially concerning where alternative "would directly mitigate such danger"); *Atariguana-Buele*, 2026 U.S. Dist. LEXIS 141138, at *6–7 & n.2.

**E. The IJ Did Not Engage With Petitioner's Evidence.**

Deciding whether to detain a person "requires review and consideration of all the relevant evidence submitted." *Rogerio Ramos*, ECF No. 19 at 5; *Martinez Aguilar v. McDonald*, No. 25-cv-13638-LTS, ECF No. 17 at 2–3 (D. Mass. June 5, 2026). In *Gamitto de Souza*, this Court found a bond hearing deficient where the IJ "failed to meaningfully engage with any other evidence presented by Petitioner, such as his tax records and business and family references documenting his extensive ties to the community." ECF No. 14. Courts have reached the same conclusion where IJs passed over voluminous submissions without discussion. *Martinez Aguilar*, ECF No. 17 at 2–3 & n.2 (twenty-three letters of support; describing *Palma Aguirre v. Moniz*, No. 26-cv-11927-LTS, ECF No. 16 (D. Mass. May 21, 2026), in which respondents conceded the hearing was deficient); *Cesvette*, 2026 U.S. Dist. LEXIS 191097, at *11 (citing *Mijango Velasco v. Wesling*, No. 26-cv-11355-LTS, ECF No. 19 (D. Mass. Apr. 24, 2026) (no meaningful consideration of voluminous bond evidence)); *Mizhirumbay v. Wesling*, No. 26-cv-725-SM-AJ, ECF No. 13 at 11–12 (D.N.H. Oct. 26, 2026) (IJ must "give some indication that he read, considered, and weighed" petitioner's submissions; otherwise the hearing is "little more than an idle theatrical exercise"). This Court reached the same conclusion in *Montesinos Olivar*, ordering release where the IJ "utterly failed to grapple with, or acknowledge in any way, the substantial body of evidence relevant to the bond determination presented by Petitioner and the government." ECF No. 14.

Here, Petitioner submitted 203 pages of evidence. The IJ's decision acknowledges it in one sentence listing three categories of "positive equities" and then states that they "do not outweigh the danger." Ex. A at 4. The decision does not mention Petitioner's sponsor, his business, his tax filings,

his child-support obligations, his eleven years in the United States without a conviction, his voluntary surrender in 2024, the complainant's support for his release, or any of the twenty-five letters. Much of that evidence bears directly on dangerousness, including the reliability of the narratives, Petitioner's conduct over time, and the conditions under which he would live if released. Because the IJ did not consider this evidence, the hearing was not the individualized inquiry the Court ordered, at which the government bears the burden of proof.

**F. Immediate Release Is the Appropriate Remedy.**

"[T]he traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for such detention is, of course, release."). The Court's Order required Respondents to provide a constitutionally adequate § 1226(a) hearing, and they did not provide one. Where, as here, an IJ's dangerousness finding rests on evidence that could not as a matter of law satisfy the government's burden, courts in this District order release. *Gamitto de Souza*, ECF No. 14 (ordering immediate release); *Montesinos Olivar*, ECF No. 14 (same); *Machado Da Silva*, ECF No. 18; *Cesvette*, 2026 U.S. Dist. LEXIS 191097, at *12–13; *De Oliveira*, 2026 U.S. Dist. LEXIS 162316, at *5.

A second hearing would not cure the violation. Due process "requires that the decisionmaker actually consider the evidence and argument that a party presents." *de la Llana-Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir. 1994) (citing *Morgan v. United States*, 298 U.S. 468, 481 (1936)); *see Suarez-Gonzalez*, ECF No. 29 at 14. The decision here does not reflect that consideration. It announces its ultimate finding in the procedural history, before any analysis. Ex. A at 1. It refers to "testimonial evidence" when none was taken. *Id.* at 3. It does not respond to any of counsel's specific challenges to the police narratives. And its central reasoning, that drunk driving is dangerous and a recent arrest predicts future conduct, would require detention of anyone

arrested for OUI, whatever the evidence. *Id.* at 4. A hearing in which the IJ "gave no indication that he had read any of the materials in petitioner's evidentiary package," and did not weigh them against the government's evidence, is "little more than an idle theatrical exercise at which the outcome is, for all practical purposes, predetermined." *Mizhirumbay*, ECF No. 13 at 11–12. Where a second hearing would not remedy the violation, release is the appropriate relief. *See Suarez-Gonzalez*, ECF No. 29 at 14–15 (ordering release rather than a second hearing on uncontested evidence of systemic pressure on immigration judges); *see Atariguana-Buele*, 2026 U.S. Dist. LEXIS 141138, at *8–9 (pattern of deficient bond hearings by same IJ despite federal court orders).

Release is also appropriate because the government had a full opportunity to make its case and offered only the two narratives; a second hearing on the same evidence could not produce a different lawful result. The IJ made no flight-risk finding.[9] Petitioner has been detained since September 27, 2026, and his application for relief is due November 4, 2026. Release also would not leave the government without protection: as in the cases above, the Court may order release "without prejudice to the respondents requiring [Petitioner] to comply with reasonable conditions of supervision upon his release, provided such conditions are identified and imposed within seven days." *Rogerio Ramos*, ECF No. 19 at 6.

In the alternative, if the Court concludes that a new hearing is the appropriate remedy, Petitioner requests that it be held within seven days before a different immigration judge, *see Mizhirumbay*, ECF No. 13 at 13; *cf. Atariguana-Buele*, 2026 U.S. Dist. LEXIS 141138, at *4 (respondents themselves requesting a new hearing before a different IJ), and that the Court's order

[9]The IJ made no finding that Petitioner is a flight risk. Ex. A at 3–5. DHS's flight-risk arguments at the hearing therefore cannot sustain his detention, and Respondents may not supply that finding after the fact. *See Vargas*, 2026 U.S. Dist. LEXIS 113837, at *20 ("Respondents' post hoc justification does not substitute for the meaningful opportunity to be heard that Petitioner must have been afforded before the IJ."); *De Oliveira*, 2026 U.S. Dist. LEXIS 162316, at *5 (ordering release where "the immigration judge did not find Petitioner to be a flight risk").

specify that (1) DHS bears the burden of proving dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence; (2) the IJ may not give substantial weight to a police report absent a conviction or independent corroborating evidence; (3) DHS must show that no condition or combination of conditions short of detention would reasonably address any risk it proves, *see Costa*, 2026 WL 371198, at *3; (4) the IJ must address the evidence Petitioner submits and state the reasons for the decision; and (5) if no compliant hearing is held within seven days, Respondents shall release Petitioner.

## V. CONCLUSION

**WHEREFORE,** for these reasons, Petitioner respectfully requests that the Court grant this motion and enter the accompanying proposed order directing his immediate release.

Respectfully submitted,

BRUNO DE OLIVEIRA BOTELHO,
By his attorney,

*/s/ Gabriela J. Cerretani* Dated: October 30, 2026

Gabriela J. Cerretani, Esq. (BBO # 706130)
Georges Cote Law LLP
235 Marginal St
Chelsea, MA 02150
857-337-4631
gcerretani@georgescotelaw.com

## LOCAL RULE 7.1(a)(2) CERTIFICATION

I certify that I conferred with counsel for Respondents, Assistant United States Attorney Benjamin Tolkoff, by email, in a good-faith attempt to resolve or narrow the issues presented by this motion. Respondents oppose the motion.

*/s/ Gabriela J. Cerretani*
Gabriela J. Cerretani

**CERTIFICATE OF SERVICE**

I certify that this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including counsel for Respondents, on October 30, 2026.

*/s/ Gabriela J. Cerretani*
Gabriela J. Cerretani